Tamara E. de Lucia
Assistant Attorney General
Office of Special Prosecutions
        and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
Email: tamara.delucia@alaska.gov

Attorney for Respondent Craig Turnbull, Commissioner, Alaska
Department of Corrections

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| Douglas Q. McClain, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 3:12-cv-00043 SLG |
| | ) | |
| vs. | ) | RESPONDENT'S RESPONSE TO |
| | ) | AMENDED PETITION FOR WRIT |
| Craig Turnbull, Commissioner, | ) | OF HABEAS CORPUS |
| Alaska Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Douglas McClain has filed an amended petition for writ of

habeas corpus challenging his conviction in state court for kidnapping,

third-degree assault, third-degree misconduct involving weapons, and two

counts of fourth-degree assault. [Docket 12] This is the respondent's

response to the amended petition, as directed by this court. [Docket 4]

<u>Factual Background And Procedural Posture</u>

Following a jury trial, Douglas McClain was found guilty of kidnapping, third-degree assault, third-degree misconduct involving weapons, and two counts of fourth-degree assault after he and two accomplices, Annie Shinault and Brenda Cleveland, held M.J. and V.B. in McClain's trailer and physically and sexually assaulted them over a period of days in 2007. *See McClain v. State,* No. A-10414, 2011 WL 2274212, at *1 (Alaska App., June 8, 2011) (unpublished), a copy of which is attached as Exhibit A. The jury acquitted McClain of four counts of first-degree sexual assault, one count of second-degree sexual assault, one count of kidnapping, one count of third-degree assault, and one count of second-degree harassment. *See Judgment* dated February 6, 2009, a copy of which is attached as Exhibit B.

1.    *The Factual Basis For McClain's Convictions*

At the time of the events at issue, M.J. was a 21-year-old prostitute who had with her mother recently moved to Anchorage from Kansas City. [Tr. 602-07][1] *See also McClain v. State,* 2011 WL 2274212, at *1. M.J. met McClain's co-defendant, Annie Shinault, in April 2007 at the Merrill Field Inn when M.J. purchased crack cocaine from her. [Tr. 609-10]

---

[1]    A copy of the complete transcript of the state trial court proceedings is attached hereto as Exhibit C. References to that transcript will be cited as "Tr.___."

Shinault introduced M.J. to McClain and McClain gave M.J. money and drugs in exchange for sex. [Tr. 616-17] Shortly thereafter, M.J. stole from McClain two ounces of crack cocaine, a gun, a cell phone, and his truck keys. [Tr. 619-21] Friends of M.J.'s also robbed McClain of approximately $8,000 at gunpoint (apparently based upon information from M.J. that McClain had money and drugs in his trailer). [Tr. 622-23, 778-87, 1246]

A few days later, Shinault picked M.J. up in her truck while M.J. was walking home; M.J. did not believe she could run away. [Tr. 635-36] Shinault next picked up McClain's co-defendant, Brenda Cleveland, and drove M.J. to McClain's trailer. [Tr. 636, 638] McClain, Shinault, and Cleveland then beat, tortured, and sexually assaulted M.J. over the course of approximately three days in retaliation for the theft of McClain's money and drugs. [Tr. 640-50, 653, 655-59, 829, 963-64, 967] *See also McClain,* 2011 WL 2274212, at *1-2.

Among other things, the trio taunted and threatened M.J., telling her she was "going to pay" and the she should pray to God and "better tell him what the fuck you did when you get to heaven." [Tr. 643] They also threatened to kill her family. [Tr. 643-44] M.J. did not believe she would make it out of McClain's trailer alive. [Tr. 643] M.J. was ordered to strip naked and crawl around on the floor while McClain whipped her with a belt. [Tr. 644-45] M.J. was repeatedly told, "You're going to die and pay for it

3

with your life." [Tr. 647] The trio then spit on M.J. "for a while" and burned M.J. with crack pipes and a cigarette. [Tr. 651, 653] McClain also made M.J. sit in a corner; he held a .40-caliber revolver in his hand and ordered her not to move, telling her that "he'd blow my motherfucking brains off if I move." [Tr. 656-57]

At one point, McClain's co-defendant Cleveland put Vaseline on her gloved hand, forced M.J. onto her hands and knees, and "shoved" her hand into M.J.'s rectum. [Tr. 650, 967] Cleveland then removed her gloved hand from M.J.'s rectum and forced M.J. to lick the glove. [Tr. 650]

M.J. was ordered to lay down on the floor and go to sleep in a back bedroom; she was naked and she complied. [Tr. 651-52] M.J. awoke to find McClain in the room; he demanded that she perform oral sex on him. [Tr. 654, 963-64] M.J. cried in protest but McClain was holding a gun; she eventually complied and performed oral sex on McClain until he ejaculated into her mouth. [Tr. 655] He then ordered her to fellate him again, but stopped her before he ejaculated and told her to clean his house "like I was his slave or something." [Tr. 655, 657] McClain warned her, "Bitch, don't try anything sneaky." [Tr. 656] M.J. understood she was not allowed to leave. [Tr. 656] (The trial jury ultimately acquitted McClain of charges involving his sexual assault of M.J.)

At some point while M.J. was being held in the back bedroom, V.B., a friend of Cleveland's, was called to help clean up McClain's trailer in

exchange for drugs. [Tr. 658-59, 1016-17, 1024-26, 1027] V.B. took McClain's crack pipe, scraped it clean, and smoked the residue. [Tr. 1029] V.B. then disassembled the pipe and hid its parts in various locations around the trailer. [Tr. 1029] V.B. also took some money ($20 in quarters) from McClain. [Tr. 1033] When McClain discovered V.B.'s transgressions, she too was subjected to torture and abuse. [Tr. 671-72, 1039-54]

Eventually McClain fell asleep and Cleveland and Shinault left the trailer. [Tr. 1052] V.B. escaped to a nearby gas station and called the police, which then led to McClain's prosecution. [Tr. 1052-54] *See also McClain,* 2011 WL 2274212, at *2.

McClain and his two co-defendants were tried together by a jury before Superior Court Judge Patrick McKay in 2008. [*See generally* Tr. 274-2221]

2.    *Factual Basis for The Claim Raised By McClain's Habeas Petition*

Prior to jury selection McClain filed a pretrial "Motion to Introduce Bias Evidence" wherein he sought to establish M.J.'s bias by introducing evidence of (1) her immunity agreement with the state, and (2) the fact that she had a warrant for her arrest (for failing to appear in court for an arraignment on a municipal prostitution charge) that was quashed prior to McClain's trial.

5

With regard to the immunity agreement, McClain argued that "what I want to do is go through and name [M.J.'s crimes for which she was given immunity by the state] and what the potential penalties were that she was facing for those crimes, because that goes to the issue of bias." [Tr. 399]

With respect to the warrant for her failure to appear at arraignment, McClain's attorney explained, "[W]e will be wanting to ask about whether there was a warrant for her arrest, and the state became aware of it and did not arrest her on it." [Tr. 401] Later, on further argument on this motion, McClain's attorney again stated that the information he wished to put before that jury was specifically that M.J. had a "bench warrant for her. And that bench warrant was never executed. And the state was aware of it. The police were aware of it." [Tr. 422] He later reiterated the same point as to the purported relevance of the information stating, "I mean, she had a warrant out for her arrest in the state and the police knew about it. They didn't enforce it. She came into town, they didn't enforce it. They let her go get it set aside." [Tr. 436] Judge McKay took the motion under advisement and allowed the parties to address the jury with their opening statements. [Tr. 438]

The prosecutor told the jury in his opening statement that M.J. "stole, among other things, drugs and a gun from Doug McClain." [Tr. 445] He was forthright about the fact that M.J. was testifying under a grant of

6

immunity "that allows [M.J.] to talk about her crimes that she committed, all the theoretical crimes that occurred during the course of this offense including the robbery, theft, [and other] serious felonies." [Tr. 452-53] And he acknowledged that "[M.J.] and [V.B.] were leading high-risk lifestyles . . . [that] revolved around their addiction to crack cocaine." [Tr. 445] He also told the jury that M.J. "took her clothes off for money" while she was in McClain's trailer, that she "was an active prostitute, to feed her addiction," and that M.J. "took money and took drugs in exchange for sex. And she did so with Doug McClain on Friday, April 6th." [Tr. 451-52]

In response, McClain argued during his opening statement that M.J. and V.B. had fabricated some of her reports of abuse – including kidnapping and sexual assault by McClain, Cleveland, and Shinault – in order to avoid prosecution for the series of crimes that they (M.J. and V.B.) committed. [Tr. 472-73, 481] McClain's attorney argued, "[Y]ou're going to have to determine, did these assaults really occur or are these manipulative women who know the system, who know how to manipulate people and went ahead and just said they were assaulted because they were angry because they got caught stealing from Doug [McClain] and they got beat up." [Tr. 480] His attorney argued that "[M.J.'s] got a whole host of very, very, very serious, serious felonies that she could be charged with." [Tr. 472] And further that "[M.J.] doesn't want to be charged with those so [she] says 'I'm not going to testify because I can be charged with crimes,'" and

7

that the state in response granted her full immunity "as long as you don't commit perjury in our opinion. So they're the sole ones who decide if she commits perjury." [Tr. 472-73] M.J. and V.B., McClain's attorney argued, were "girls that had oral sex like they shake someone's hand. And they do it for money. And they do it for drugs. And they do it all the time." [Tr. 479] Co-defendant Annie Shinault's attorney added that M.J. and V.B. were "thieving, crack[-]addicted, proven lying prostitutes." [Tr. 483]

With respect to the bench warrant issue, Judge McKay decided that McClain could inquire as to "the existence of the bench warrant that wasn't executed and as to a phone call to Victim Rights. And that's it. Not the – not what the underlying crime was." [Tr. 664] McClain's attorney responded, "[T]hat's fine, I have no question about that ruling." [Tr. 664]

3.     *McClain's Appeal to the Alaska Court of Appeals*

McClain appealed his convictions arguing several claims, including that the trial court erroneously limited his cross-examination into M.J.'s bias. *See Appellant's Brief* at 14-25, attached as Exhibit D; *see also Appellant's Reply Brief* at 2-12, attached as Exhibit E. The state in response argued that McClain was able to introduce specific evidence relevant to establishing M.J.'s potential bias or motivation to testify favorably for the state and that McClain failed to demonstrate error or prejudice in part because he could not show that additional cross-examination of M.J. would

have altered the jury's verdicts. *See Appellee's Brief* at 13-24, attached at Exhibit F.  The Alaska Court of Appeals held that because Judge McKay had allowed the three defendants to introduce ample and substantial evidence relevant to establishing M.J.'s potential bias or motivation to testify favorably for the state, there was "no reasonable possibility that additional examination regarding the pending prostitution charge would have altered the jury's verdicts." *McClain,* 2011 WL 2274212, at *3.

McClain filed a petition for hearing with the Alaska Supreme Court, requesting review of the Alaska Court of Appeals' holding that McClain was allowed a full opportunity to effectively cross-examine M.J. *See Petition for Hearing*, attached as Exhibit G. On January 17, 2012, the Alaska Supreme Court summarily denied McClain's petition. *See Order: Petition for Hearing*, attached as Exhibit H.

McClain filed his petition for federal habeas relief on February 27, 2012. [Docket 1] Following the appointment of counsel, McClain filed an amended petition asserting a single claim for relief: that he was denied the right to cross-examine the victim concerning her bias. [Docket 12 at 1, 10-24]

<u>McClain's Amended Petition And The Respondent's Response</u>

McClain claims the state trial judge violated his rights to confrontation by restricting his examination of M.J. The respondent concedes that McClain has exhausted his available state-court remedies

with respect to this claim and that his petition is timely. But McClain's petition cannot succeed under 28 U.S.C. § 2254 because, as explained below, the state court's decision was not (1) contrary to or an unreasonable application of clearly established federal law or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

The respondent asks this court to promptly set a briefing schedule to allow the parties to brief the issue. The respondent believes that no evidentiary hearing will be required, nor would such a hearing be appropriate under 28 U.S.C. § 2254(e).

1.  *The State Court's Ruling Was Not Contrary To Or An Unreasonable Application Of Clearly Established Federal Law*

The Confrontation Clause guarantees criminal defendants the right to confront and cross-examine witnesses. One of the main components of this guarantee is the right to question a witness's motivation or bias. *See Davis v. Alaska*, 415 U.S. 308, 316-18, 94 S.Ct. 1105, 1110-11 (1974). "The partiality of a witness . . . is always relevant as discrediting the witness and affecting the weight of his testimony." *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110 (quoting John Wigmore, *Evidence in Trials at Common Law* (Chadbourn rev. 1970), § 940, Vol. 3A, p. 775). For this reason, a trial judge "must be particularly solicitous toward cross-examination that is intended to reveal

10

bias, prejudice, or motive to testify falsely." *Wood v. State,* 837 P.2d 743, 745 (Alaska App. 1992). Although a defendant has the right to confront his accuser through cross-examination, the trial judge retains wide latitude to impose reasonable limits on the scope of cross-examination, including when the defendant is attempting to establish the witness's bias, prejudice, and motive. *Id.* at 746-47; *see also Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106. S.Ct. 1435 (1986). The Confrontation Clause guarantees only "an opportunity to effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294 (1985).

McClain argues that he should have been allowed to introduce the fact that, at the time of his trial, M.J. had a pending prostitution charge against her – a charge filed by the Municipality of Anchorage that was not included in her immunity agreement – in order to demonstrate her motivation to testify favorably for the state. [Docket 12 at 19-22] Thus, the crucial issues are whether McClain was allowed adequate opportunity to cross-examine M.J. as to her bias and any motive she may have had to testify favorably for the state and whether, if his right to cross-examine M.J. was erroneously limited, that error was harmless beyond a reasonable doubt.

The state court found that McClain "was permitted to cross-examine M.J. extensively on her bias; the only restriction the court placed

was that McClain could not inquire into the crime (prostitution) that formed the basis for her outstanding warrant." *McClain,* 2011 WL 2274212, at *3. The court further found that if any error occurred, it was harmless beyond a reasonable doubt. *Id.* This was because "the name of the charge that M.J. was facing was not particularly relevant to her bias" and since McClain had "thoroughly cross-examined M.J. regarding the felony charges covered by the state's immunity agreement [which were] much more serious penalties than the misdemeanor prostitution charge" and the jury "already knew that M.J. was a prostitute and smoked crack," there was no reasonable possibility that additional examination into the pending prostitution charge would have altered the jury's verdicts. *Id.*

The legal principles applied by the state court – *i.e.*, allowing a trial judge discretion to impose reasonable limits on the scope of cross-examination and employing the harmless beyond a reasonable doubt test to Confrontation Clause questions – is neither contrary to nor an unreasonable application of clearly established federal law.

McClain cannot demonstrate that the trial judge abused his discretion in placing reasonable limits on his cross-examination of M.J. and in any case, the state appellate court did not find that the trial judge had abused his discretion. *See Brecht v. Abrahamson,* 507 U.S. 619, 640, 113 S.Ct. 1710, 1723 (1993) (Stevens, J., concurring) (in order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the

12

error was of a constitutional dimension and that it was not harmless). But even assuming that McClain can demonstrate that it was error to prevent him from inquiring as to the underlying charge that formed the basis for the quashed warrant, McClain is also required to show that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe,* 244 F.3d 758, 767 n.7 (9th Cir.2001) (quoting *Brecht,* 507 U.S. at 623). McClain bears the burden of demonstrating prejudice under this test. *Castillo v. Stainer,* 997 F.2d 669, 669 (9th Cir. 1993). He cannot meet this burden.

The cases relied on by McClain do not demonstrate that the state court decision is contrary to or an unreasonable application of clearly established federal law. First, each of the cases relied on by McClain involve situations where the defendant was completely prohibited from cross-examining the witness as to any potential bias or motivation to testify favorably for the state. Second, in each of the cases, the courts applied the harmless-beyond-a-reasonable doubt test articulated in *Chapman v. California,* 386 U.S. 18, 23-24, 87 S.Ct. 824, 828 (1967) – the same test the state court applied in McClain's case.

In *Wood v. State,* the defendant was completely prohibited from cross-examining the victim about a deferred prosecution agreement which could have established a possible motive for the victim's accusations against Wood. *See Wood,* 837 P.2d at 745. In *Davis v. Alaska,* the defendant was

13

completely prohibited from cross-examining a key prosecution witness as to his probation status in order to demonstrate his possible bias or motivation to testify favorably for the state. *See Davis,* 415 U.S. at 309-10, 94 S.Ct. at 1107. In *Delaware v. VanArsdall*, the defendant was completely prohibited from inquiring into the possibility that a crucial witness was biased as a result of the state's dismissal of his pending public drunkenness charge. *VanArsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. In *Evans v. State,* the defendant was completely prohibited from inquiring as to whether the undercover operative's desire to become a policeman resulted in a motivation to testify falsely in order to garner favor with the state. *Evans v. State,* 550 P.2d 830, 839 (Alaska 1976). And in *Braund v. State,* the defendant was prohibited from cross-examining the state's witness as to the felony charges against her and which the state had dismissed prior to her testimony in the defendant's trial. *See Braund v. State,* 12 P.3d 187, 189-90 (Alaska App. 2000). In all of the cases cited by McClain, the court applied the harmless error test articulated in *Chapman v. California*. That is, each court applied the harmless beyond a reasonable doubt test to determine the gravity of the errors in curtailing the cross-examination of the witnesses in question. *See VanArsdall,* 475 U.S. at 680-81, 106 S.Ct. at 1436; *Davis,* 415 U.S. at 320, 94 S.Ct. at 1112; *Wood,* 837 P.2d at 749; *Evans,* 550 P.2d at 840-41; *Braund,* 12 P.3d at 192.

Here, McClain's right to confront and cross-examine M.J. as to her alleged motivation or bias was unaffected by the court's prohibition on introduction of the underlying prostitution charge for which M.J. failed to appear in court. Judge McKay found that the relevance was "only as to the failure to arrest [on the] warrant; not as to the actual crime. The fact that there is a warrant out there and that the state and the municipality, law enforcement officers aren't arresting her, yes, I think that may be something there. As far as what the underlying crime is, no, I don't see it has any relevance." [Tr. 403] Indeed, even the defense agreed that the relevant issue was the existence of and quashing of the bench warrant, and whether M.J. believed the state was involved in getting the warrant quashed. [Tr. 401, 422, 436] Judge McKay did not abuse his discretion in limiting the introduction of the underlying criminal prostitution charge for which M.J. was supposed to appear, particularly because the existence of the warrant and the subsequent quashing of the warrant, in other words the actual basis for any bias, were revealed.

The state court of appeals applied the correct harmless error analysis and McClain cannot establish that the state court's ruling is contrary to or an unreasonable application of clearly established federal law.

2.      *The State Court's Decision Does Not Rest On An Unreasonable Determination Of The Facts*

The alternative ground for federal habeas relief – *i.e.*, that the

state court's factual determinations were unreasonable in light of the evidence presented in the state court proceeding – is similarly unavailable to McClain. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, ___ U.S. ___, 130 S.Ct. 841, 849 (2010). "Even if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 130 S.Ct. at 849 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42, 126 S.Ct. 969, 976 (2006) (alterations in *Wood*)).

Here, the state court of appeals held that additional cross-examination as to the fact of M.J.'s prostitution charge would not have altered the jury's verdicts. *McClain,* 2011 WL 2274212, at *3. Given the ample evidence of M.J.'s bias and motivation to testify favorable for the state that the jury did hear, the court of appeals' holding is not unreasonable determination of the facts.

As mentioned, the prosecutor told the jury in his opening statement that M.J. "stole, among other things, drugs and a gun from Doug McClain." [Tr. 445] He was forthright about the fact that M.J. was testifying under a grant of immunity "that allows [M.J.] to talk about her crimes that she committed, all the theoretical crimes that occurred during the course of this offense including the robbery, theft, [and other] serious

16

felonies." [Tr. 452-53] And he acknowledged that "[M.J.] and [V.B.] were leading high-risk lifestyles . . . [that] revolved around their addiction to crack cocaine." [Tr. 445] He also told the jury that M.J. "took her clothes off for money" when she previously was in McClain's trailer, that she "was an active prostitute, to feed her addiction," and that M.J. "took money and took drugs in exchange for sex. And she did so with Doug McClain on Friday, April 6th." [Tr. 451-52]

In their opening statements, the defendants argued that M.J. and V.B. had fabricated their claims of abuse – including the kidnapping and sexual assault by McClain, Cleveland, and Shinault – in order to avoid prosecution for the series of crimes that they committed. [Tr. 472-73, 481, 1706-08]

McClain's attorney argued, "[Y]ou're going to have to determine, did these assaults really occur or are these manipulative women who know the system, who know how to manipulate people and went ahead and just said they were assaulted because they were angry because they got caught stealing from Doug and they got beat up." [Tr. 480] McClain's attorney argued that "[M.J.'s] got a whole host of very, very, very serious, serious felonies that she could be charged with." [Tr. 472] And further that "[M.J.] doesn't want to be charged with those so [she] says 'I'm not going to testify because I can be charged with crimes,'" and that the state in response granted her full immunity "as long as you don't commit perjury in our

17

opinion. So they're the sole ones who decide if she commits perjury." [Tr. 472-73] M.J. and V.B., McClain's attorney argued, were "girls that had oral sex like they shake someone's hand. And they do it for money. And they do it for drugs. And they do it all the time." [Tr. 479] Cleveland's attorney argued that the jury would have to scrutinize the victims' stories more carefully because they were testifying under grants of immunity. [Tr. 1706] The defense witnesses, Cleveland argued, should be viewed as more credible because "unlike the state's witnesses, they're not going to be testifying under grants of immunity." [Tr. 1713] Shinault's attorney added that M.J. and V.B. were "thieving, crack[-]addicted, proven lying prostitutes." [Tr. 483]

During her direct examination, M.J. was questioned at length about her crimes and informed by the prosecutor of the potential penalties for her actions. [Tr. 624-26] The jury heard that M.J.'s acts of (1) stealing McClain's gun was a class C felony punishable by zero to five years in jail, (2) distributing crack cocaine was a class B felony punishable by zero to 10 years in jail, and (3) participating as an accomplice to robbery was punishable by five to 20 years in jail. [Tr. 624-25] The prosecutor discussed the fact that M.J. was given transactional immunity in exchange for her testimony. [Tr. 625] The prosecutor then questioned M.J. about the fact of a bench warrant issued for M.J.'s arrest and the fact that the Office of Victims' Rights assisted her in getting the bench warrant quashed and in

18

scheduling an arraignment for her, but without mentioning the basis for the warrant or the underlying charged crime of prostitution. [Tr. 676]

During his cross-examination of M.J., McClain's attorney asked M.J. whether she was actively engaged in prostitution at the time of the assaults, and M.J. answered in the affirmative. [Tr. 689] Cleveland's attorney asked M.J. whether she had been prostituting herself with McClain in exchange for drugs and a place to stay, and she answered in the affirmative. [Tr. 929-31, 937-39] McClain's attorney also asked her whether crack-addicted people will "lie to the police . . . lie about events that occurred . . . make up events that didn't occur . . . lie to get out of trouble," and M.J. answered in the affirmative to each of his questions. [Tr. 691-92] Cleveland's attorney ended her cross-examination of M.J. by asking M.J. whether she had lied by omission in not telling the Sexual Assault Response Team (SART) nurse or her own six-year-old daughter about her prostitution lifestyle, and M.J. answered in the affirmative. [Tr. 937-39] McClain's attorney next questioned M.J. about the crimes for which she had received an immunity agreement, the classification of each offense, and the minimum and maximum penalties each offense carried. [Tr. 789-96] M.J. admitted that she "got a huge break" from the state under the immunity agreement for the "nine serious felonies" that she admittedly committed. [Tr. 794]

McClain's attorney also vigorously examined M.J. about the existence of the bench warrant for her arrest and the fact that neither the state nor the police arrested M.J. on that warrant when she returned to Alaska for McClain's trial. [Tr. 802-04] But McClain's basic premise in the trial court – that the state should have effected M.J.'s arrest on the bench warrant upon her entering the state in response to the subpoena to testify at trial – is a false one. Alaska Statute 12.50.030 provides that where a person "comes into this state in obedience to a subpoena directing the person to attend and testify in this state, the person shall not . . . be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before entering this state under the subpoena." Thus it would have been statutorily impossible for police to have met M.J. as she disembarked the plane in order to arrest her on the bench warrant for failing to appear at her arraignment on a misdemeanor prostitution charge, as the defense argued in the trial court. [Tr. 802-804] That the defendants were able to argue to the jury that M.J. *should* have been arrested on the warrant [Tr. 2129] (in reality a legal impossibility) was a windfall to their defense.

Here, McClain's right to confront and cross-examine M.J. as to her alleged motivation or bias was unaffected by the court's prohibition on introduction of the underlying prostitution crime for which M.J. failed to appear in court. As mentioned, Judge McKay found that the relevance was

20

"only as to the failure to arrest [on the] warrant; not as to the actual crime . . . As far as what the underlying crime is, no, I don't see it has any relevance." [Tr. 403] Indeed, even the defense agreed that the relevant issue was the existence of and quashing of the bench warrant, and whether M.J. believed the state was involved in getting the warrant quashed. [Tr. 401, 422, 436]

Moreover, as it was, the fact that the jury was not told of the basis for M.J.'s criminal charge (prostitution) potentially left them to imagine even worse scenarios than the fact that she was arrested for prostitution, a fact already elicited numerous times during the trial. In other words, the jury's lack of knowledge of the basis for the criminal charge likely led them to imagine worse consequences than a class B misdemeanor. *See* AS 11.66.100; AMC 8.65.010-.020. The defendants were able to argue both that M.J. fabricated her claims in order to avoid prosecution for her own felony crimes and also to demonstrate that a warrant was quashed, purportedly, in exchange for her willingness to testify. [Tr. 472-73, 480-81, 689, 691-92, 789-96, 802-04, 2127-29, 2167] It is difficult to imagine what more the defendants could have introduced that would better illustrate M.J.'s potential bias. Put another way, the jury heard ample evidence of M.J.'s bias and incentive to curry favor with the state and McClain cannot demonstrate that additional cross-examination of M.J. would have altered the jury's verdicts.

Case 3:12-cv-00043-SLG-DMS   Document 13   Filed 06/14/12   Page 21 of 23

Based on the foregoing, the court of appeals correctly held that the verdict would not have been altered by allowing the jury to hear evidence of the underlying criminal prostitution charge for which M.J. was supposed to appear. This is particularly so because the jury heard ample evidence of both the existence of the warrant and the subsequent quashing of the warrant as well as the host of other more serious felony crimes for which M.J. received immunity in exchange for her testimony. It is implausible that the jury did not understand the extent of M.J.'s potential bias or motivation.

Case 3:12-cv-00043-SLG-DMS   Document 13   Filed 06/14/12   Page 22 of 23

<u>Conclusion</u>

For the foregoing reasons, McClain's amended petition for writ of habeas corpus should be denied. As noted earlier, the respondent asks that this court promptly set a briefing schedule. No evidentiary hearing will be necessary.

DATED June 14, 2012, at Anchorage, Alaska.

MICHAEL C. GERAGHTY
ATTORNEY GENERAL

<u>s/ Tamara E. de Lucia</u>
  Assistant Attorney General
  State of Alaska, Dept. of Law
  Office of Special Prosecutions
    and Appeals
  310 K St., Suite 308
  Anchorage, Alaska 99501
  Telephone: (907) 269-6250
  Facsimile: (907) 269-6270
  Email: tamara.delucia @alaska.gov
  Alaska Bar. No. 9906015

**Certificate of Service**

I certify that on June 14, 2012, a copy of the foregoing Respondent's Response To Petitioner's Amended 28 USCS §2254 Petition was served electronically on Linda A Webb.

<u>s/ Tamara E. de Lucia</u>